**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **BRYAN A. KOONS** )<br>128 Oliver Court )<br>Purcellville, Virginia 20132 )<br> )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>**CORPORATE PRESS, INCORPORATED** )<br>800 Commerce Drive )<br>Upper Marlboro, MD, 20774 )<br> )<br>    Serve: CT Corporation System )<br>    4701 Cox Rd Ste 285, )<br>    Glen Allen, VA, 23060 )<br> )<br>    **Defendant.** )<br>_____) | Civil Action No.  1:20-cv-00039 |

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Bryan Koons, by and through its undersigned counsel, for his Verified Complaint for Declaratory Judgment against Corporate Press, Incorporated ("Corporate Press"), hereby states as follows:

### INTRODUCTION

1.  In this Action, Mr. Koons seeks a declaratory judgment that Defendant Corporate Press cannot enforce a noncompetition agreement contained in an Employment Agreement (attached as Exhibit A), into which Mr. Koons entered in August 2008 with a prior employer, Colorcraft of Virginia, Inc.

2.  The restrictive covenant is unenforceable because: (i) Defendant Corporate Press is not a party to the contract and the restrictive covenant is not assignable (*see Reynolds & Reynolds Co. v. Hardee*, 932 F. Supp. 149, 155 (E.D. Va. 1996), *aff'd*, 133 F.3d 916 (4th Cir. 1997)); and

1

(ii) the covenant, as drafted, is overbroad and thus in unlawful restraint against trade that violates Virginia's public policy.

## PARTIES

3. Mr. Koons is a citizen of the Commonwealth of Virginia residing in Purcellville, Virginia.

4. Defendant Corporate Press is a District of Columbia corporation, with its principal place of business in Maryland, and thus, for diversity purposes, is a citizen of the District of Columbia and the State of Maryland.

## JURISDICTION AND VENUE

5. This case arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, and the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, based upon the diversity of citizenship of the parties and an amount in controversy in excess of $75,000.

6. This Court has personal jurisdiction over Defendant Corporate Press because, among other things: (i) the Employment Agreement on which this action is based was a contract between two Virginia residents to provide services in Virginia; (ii) during his employment with Corporate Press, Mr. Koons continued to provide a substantial amount of his employment services in Virginia; and (iii) by asserting that it intends to enforce the postemployment restrictions set forth in the Employment Agreement, Corporate Press has interfered with Mr. Koons' current employment, which is based in Fairfax, Virginia.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Defendant Corporate Press is subject to personal jurisdiction in this district and a substantial part of the events giving rise to the claims occurred within this district.

## BACKGROUND

**Mr. Koons' Employment with Colorcraft**

8. In May 1996, Mr. Koons began working for a commercial printer in Sterling, Virginia called Colorcraft of Virginia, Inc. ("Colorcraft").

9. Koons worked internally for the first 12 years of his Colorcraft employment in areas such as production and customer service.

10. In December 2007, Mr. Koons became a salesperson for Colorcraft, responsible for selling and delivering to customers a variety of commercial printing products such as brochures, pocket folders, annual reports, magazines and flyers.

11. Mr. Koons was paid commissions for the sales he made on behalf of Colorcraft.

12. As part of his employment duties, Mr. Koons was responsible for calling and meeting with potential customers to generate new business, meeting with customers to discuss current orders, and working with Colorcraft's production teams to ensure his customers' orders were being produced properly and on schedule.

13. Throughout his employment with Colorcraft, Mr. Koons' office location was in Sterling, Virginia.

**Mr. Koons Enters the Employment Agreement With Colorcraft.**

14. On August 1, 2008, Mr. Koons entered into the Employment Agreement with Colorcraft of Virginia, Inc. *See* Exhibit A. The agreement was signed at Colorcraft's Sterling, Virginia office.

15. Colorcraft is referred to in the Employment Agreement both as "Colorcraft of Virginia, Inc." and the "Company." Neither term is defined to include successor entities nor is an assignability or successorship clause contained anywhere in the Employment Agreement.

16. The parties to the Employment Agreement agreed that the document would be "construed and interpreted in accordance with the laws of the Commonwealth of Virginia."

17. Paragraph 5 of the Employment Agreement (the "Non-Compete") states:

> <u>Covenant Not to Compete.</u> Employee agrees that upon termination of his employment for any reason, except because of dissolution of the Company, for a one-year period subsequent to his date of termination, either individually or in conjunction with any other person, corporation, or business entity, he will not solicit printing jobs from any person, corporation, association or other entity for whom or for which Colorcraft of Virginia, Inc. performed work or services at any time during the two-year period prior to the date of his termination, or from whom or from which Colorcraft of Virginia, Inc. solicited printing jobs during the two-year period prior to the date of his termination.

18. The Non-Compete purports to restrict Mr. Koons, for a one-year period, from soliciting <u>all customers</u> of Colorcraft and <u>all non-customers</u> that Colorcraft had solicited at any time in the two-year period before Mr. Koons' last day of employment.

19. This restriction is not limited to the customers with which Mr. Koons actually worked during his employment, but rather includes *all* Colorcraft customers and *all* non-customers whom Colorcraft unsuccessfully solicited, regardless of Mr. Koons' involvement or even knowledge of the relationship or solicitation.

20. In addition, the Non-Compete contains no limitation to its geographic scope.

21. The Employment Agreement does not contain a provision allowing for assignment of the Non-Compete by Colorcraft to any other entity.

22. Paragraph 9 of the Employment Agreement states that the "Agreement shall not be amended except by mutual consent of the parties in writing."

23. The parties never entered into any amendment of the Employment Agreement, written or otherwise.

24. After entering into the Employment Agreement, Mr. Koons remained employed with Colorcraft until January 1, 2013, at which time Colorcraft ceased its legal existence.

**Mr. Koons' Employment with Corporate Color, Inc.**

25. On January 1, 2013, Colorcraft, a Virginia corporation, was merged into an existing Maryland corporation, Corporate Color, Inc. ("Corporate Color"). *See* Exhibit B (January 1, 2013 merger documents).

26. Prior to the merger, Corporate Color had approximately 25 to 30 employees.

27. Following the merger, Colorcraft ceased to exist as a legal entity. *See id.*

28. Beginning January 1, 2013, Mr. Koons became employed as a salesman for Corporate Color.

29. Mr. Koons did not sign any employment agreement with Corporate Color during his employment with that company.

30. Mr. Koons did not sign any document consenting to the assignment of the Employment Agreement to Corporate Color.

31. The Employment Agreement is a personal services contract.

32. During his employment, no one in Corporate Color management communicated to Mr. Koons that Corporate Color believed he was still bound by the Non-Compete into which he had entered with Colorcraft, by then a defunct entity.

33. Throughout his employment with Corporate Color, Mr. Koons worked out of the company's office in Sterling, Virginia.

34. Mr. Koons remained employed with Corporate Color until January 1, 2018, when Corporate Color ceased its legal existence.

**Mr. Koons' Employment with Defendant Corporate Press, Inc.**

35. On January 1, 2018, Corporate Color was merged into another existing District of Columbia corporation, Defendant Corporate Press. *See* Exhibit C (January 1, 2018 merger documents).

36. Following the merger, Corporate Color ceased to exist as a legal entity. *See id.*

37. Beginning January 1, 2018, Mr. Koons became employed as a salesman for Defendant Corporate Press.

38. Mr. Koons did not sign any employment agreement with Defendant Corporate Press during his employment with that company.

39. Mr. Koons did not sign any document consenting to the assignment of the Employment Agreement to Corporate Press.

40. Prior to his resignation of employment from Corporate Press, no one in Corporate Press management communicated to Mr. Koons that Corporate Press believed he was still bound by the Non-Compete into which he had entered with Colorcraft, by then a defunct entity.

41. During his time with Defendant Corporate Press, Mr. Koons managed approximately 80 to 100 customer accounts for the company.

42. Each of Mr. Koons' customers was located in either Northern Virginia, the District of Columbia, or Maryland.

43. During his employment, Defendant Corporate Press had 11 other salespersons on its staff.

44. Mr. Koons did not have contact with the customers that were assigned to any of the other 11 salespersons.

45. Mr. Koons did not gain any specialized knowledge regarding the customers that were assigned to the other 11 salespersons.

46. Mr. Koons was not aware of the identities of the non-customers whom the other 11 salespersons unsuccessfully solicited for business during the two years immediately preceding his resignation from Corporate Press.

47. In November 2019, Mr. Koons was presented an offer to become employed as a salesman with a commercial printer, HBP, Inc. ("HBP").

48. On November 26, 2019, Mr. Koons met with Sales Manager Chris Edgar, to advise Corporate Press that he intended to resign his employment to accept employment with HBP. Mr. Edgar requested that Mr. Koons not immediately resign so that Defendant Corporate Press's CEO, Michael Marcian, could discuss the matter further with Mr. Koons.

49. During this meeting, Mr. Edgar asserted that Corporate Press had a right to enforce the Employment Agreement into which Mr. Koons had entered with Colorcraft, and that Mr. Koons' post-employment activities would be restricted by the Non-Compete.

50. Over the next few days, Mr. Koons had several additional conversations with Mr. Marcian.  During these conversations, Mr. Marcian reiterated Mr. Edgar's claim that Corporate Press could enforce the Employment Agreement against Mr. Koons.

51. On December 3, 2019, Mr. Koons formally resigned his employment with Corporate Press.

52. At the time of his resignation, Corporate Press had approximately 750 customers. Of these, Mr. Koons was not in contact and did not have specialized knowledge with approximately 650 of these customers.

53. Because of his lack of familiarity with these customers, Mr. Koons would not be able to accurately identify a substantial portion of these customers.

54. Mr. Koons is not aware of the identity of any prospective customers that have been solicited by Corporate Press's other salespersons over the last two years.

**Corporate Press' Threatened Legal Action**

55. Since Mr. Koons provided notice of his intent to resign his employment, Corporate Press has repeatedly asserted that Mr. Koons is bound by the Non-Compete.

56. Corporate Press has indicated it will bring legal action to enforce the Employment Agreement and Non-Compete if Mr. Koons solicits any of Corporate Press' customers.

57. Despite Mr. Koons' explanation (made through his legal representative) of the myriad of reasons the Non-Compete is unenforceable, Defendant Corporate Press has continued assert it can and will enforce the Non-Compete against Mr. Koons.

58. On December 04, 2019, Mr. Koons began employment with HBP, in its Fairfax, Virginia office.  Mr. Koons is compensated, in part, on commissions for the revenue he generates for HBP.

59. Because of Corporate Press' legal threats, Mr. Koons has so far refrained from soliciting any of the clients he formerly worked with at Corporate Press.

60. However, his restraint is inflicting significant damage on Mr. Koons and his new employer.

61. Mr. Koons estimates that if he were contacting his former clients, he could generate between $2 and $3 million in sales over the next twelve months, which would result in excess of $75,000 in commissions to Mr. Koons.

62. In addition to causing reduced commission payments for himself, Mr. Koons' failure to contact his former clients has the potential to harm his relationship with his new employer.

63. Since resigning his employment with Corporate Press, Mr. Koons has attempted in good faith to negotiate a settlement with Corporate Press, but it does not appear that such a settlement can be reached.

64. Because Corporate Press is not entitled to enforce a personal services agreement into which Mr. Koons entered with a prior (and now defunct) entity, and because the Non-Compete (even if it were deemed to be assignable) by its terms is drafted in such a manner as to be broader than needed to protect the legitimate business interests of Corporate Press, Mr. Koons is in entitled to speedy declaration by this Court to that effect.

## COUNT I
## DECLARATORY JUDGMENT

65. Mr. Koons restates and incorporates by reference the allegations contained in Paragraphs 1 through 63 hereof as if fully set forth herein.

66. Defendant Corporate Press cannot enforce the Non-Compete against Mr. Koons because, among other reasons:

   a. The Employment Agreement was entered into with Colorcraft of Virginia, Inc., not Corporate Press, and the parties never agreed to assignment of that agreement. *See, e.g., Reynolds & Reynolds Co. v. Hardee*, 932 F. Supp. 149, 155 (E.D. Va. 1996), *aff'd*, 133 F.3d 916 (4th Cir. 1997); *Christian Def. Fund v. Winchell & Assoc., Inc.*, 47 Va. Cir. 148 (Fairfax 1998).

   b. Because Colorcraft ceased to exist as of January 1, 2013, there are necessarily no customers "for who or for which Colorcraft of Virginia, Inc. performed work or services at any time during the two-year period prior to" December 3, 2019 (emphasis added).

   c. By its own terms the Non-Compete does not apply in situations where there was a "dissolution of the Company."


    d. The Non-Compete is overbroad and unenforceable under Virginia law because it restricts solicitation of *all* customers and solicitation of *all* non-customers whom the Company solicited , including those customers and non-customers with whom Mr. Koons was not involved. *See, e.g., Lasership Inc. v. Watson*, 79 Va. Cir. 205 (Fairfax 2009); *Strategic Enterprise Solutions, Inc. v. Ikuma*, 77 Va. Cir 179 (Fairfax 2008).

    e. The Non-Compete is overbroad and unenforceable because it lacks a geographic scope. *See, e.g., Simmons v. Miller*, 261 Va. 561, 581 (2001); *Phoenix Renovation Corp. v. Rodriguez*, 439 F. Supp. 2d 510, 522 (E.D. Va. 2006); *Cantol, Inc. v. McDaniel*, 2006 WL 1213992, at *6 (E.D. Va. 2006).

67. Mr. Koons is therefore entitled to a declaratory judgment against Defendant Corporate Press that it cannot enforce the Non-Compete against Mr. Koons.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Koons request this Court enter judgement in his favor and against Defendant as follows:

(A) Declare that Defendant Corporate Press, Inc. does not have standing to enforce the Non-Compete;

(B) Declare that the Non-Compete is overbroad and unenforceable under Virginia law; and

(C) Such other further legal and equitable relief as may be appropriate under the circumstances.

Dated: January 14, 2020           Respectfully submitted,

                                               /s/
Edward Lee Isler, Va. Bar No. 27985
Micah E. Ticatch, Va. Bar No. 83351
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690
(703) 748-2695 (fax)
eisler@islerdare.com
mticatch@islerdare.com

*Counsel for Plaintiff Bryan Koons*

## VERIFICATION

I declare under penalty of perjury, that I have reviewed the foregoing Verified Complaint for Declaratory Judgment, and that each of the factual allegations stated therein are true and correct to the best of my knowledge information and belief.

Executed this 14th day of January 2020 in Virginia.

_____
Bryan A. Koons

1-14-2020